2026 IL App (1st) 250216-U

FOURTH DIVISION
Order filed: January 29, 2026

No. 1-25-0216

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| ERIC CABANA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | No. 24 L 50371 |
| SECURITY, DIRECTOR OF THE ILLINOIS | ) | |
| DEPARTMENT OF EMPLOYMENT SECURITY, and | ) | |
| ILLINOIS DEPARTMENT OF EMPLOYMENT | ) | |
| SECURITY BOARD OF REVIEW, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The Illinois Department of Employment Security Board of Review's finding that the plaintiff violated the criminal eavesdropping statute was against the manifest weight of the evidence, and its conclusion that the plaintiff was discharged due to misconduct and thus, not eligible for unemployment benefits based on that finding was clearly erroneous.

¶ 2    Plaintiff Eric Cabana ("Cabana"), *pro se*, appeals from an order of the circuit court of Cook County affirming the decision of the Illinois Department of Employment Security ("IDES") Board of Review denying him unemployment benefits under the Unemployment Insurance Act ("Act"), finding that he was discharged for misconduct. 820 ILCS 405/602(A) (West 2024). For the following reasons, we reverse.

¶ 3    Cabana worked as a window treatment installer with JC Licht, LLC ("JC Licht") from July 2021 until his discharge on August 31, 2022. JC Licht viewed Cabana as an independent contractor during his time working for the company. However, in July 2023, the Illinois Department of Labor found that JC Licht violated the Employee Classification Act with regards to its classification of installers. See 820 ILCS 185/10 (West 2024). The result was that Cabana was classified as an employee of JC Licht.

¶ 4    In August 2023, Cabana filed a claim for unemployment benefits with IDES. JC Licht filed a response, asserting that Cabana had been discharged for dishonesty related to his performance and that, when it asked Cabana to discuss these matters, he "began an abusive email campaign" against Ron Bryza, the Director of Home Fashions for JC Licht, and "threatened the company multiple times." JC Licht attached several of these emails to its response.

¶ 5    An IDES claims adjuster interviewed Cabana, who stated he was never given a reason for his discharge. The claims adjuster also interviewed Liz Vitellaro, the Director of Human Resources for JC Licht. She stated that JC Licht discharged Cabana because of his rude and condescending emails, poor performance and borderline threats. The claims adjuster denied Cabana's claim, finding that he was not eligible for unemployment benefits under section 602(A)(5) of the Act

(820 ILCS 405/602(A)(5) (West 2024)) because he was insubordinate toward his supervisor and refused to come for a meeting to discuss his performance issues.

¶ 6    Cabana appealed and the matter proceeded to an evidentiary hearing before an IDES referee. Cabana testified on his own behalf, and Vitellaro and Bryza testified on behalf of JC Licht. The parties admitted several emails between Cabana and Bryza and other documents into evidence.

¶ 7    Vitellaro testified that Cabana was asked to attend a performance review meeting on August 31, 2022 to discuss concerns about his performance. In emails after the meeting was requested, Cabana questioned the performance review and "became insulting and belligerent" which "raised a couple of concerns." She testified that the company became "alarmed" about the "tenor of his *** interactions" as well as because Cabana indicated that, on at least two occasions, he had "taped conversations." At that point, JC Licht decided to "end the relationship with him." Vitellaro testified that Cabana did not refuse to come to the meeting. She acknowledged that there were no written warnings given to Cabana and that he was not provided with copies of JC Licht policies. Bryza testified that Cabana was terminated because of his belligerent, abusive and combative emails. Bryza testified that he had conversations with Cabana about "the type of work that was being done," but did not provide details of any specific conversations. JC Licht canceled the August 31, 2022 performance review meeting the day before and terminated Cabana.

¶ 8    In the emails, Cabana made crude comments, including referring to Bryza as a director of "bowel movement" and the "only living brain donor" and asserting that JC Licht "can hire a chimp to remedy" Bryza's purported incompetence. In one email, Cabana admitted to using a recording device at training sessions without permission. Specifically, Cabana stated that, during an "ePIC" training, he went to the restroom to "mak[e] adjustments to [his] recording device."

¶ 9    Cabana testified that he was not given a specific reason for his discharge. He denied receiving warnings for any violation of employer policy, but agreed that he had informal conversations with Bryza about his performance. Cabana testified that he never received any complaints about his work from customers. On cross-examination, Cabana admitted that he used a recording device to record a meeting with Bryza so he could use the recording later, and admitted that he did not ask for Bryza's consent before recording the meeting.

¶ 10    Following the hearing, the referee affirmed the denial of benefits. He found that Cabana took issue with a requested performance review meeting and the tone turned argumentative. The referee found that Cabana was not issued any written warnings, was not made aware of any JC Licht policies, and was not insubordinate. The referee found that Cabana admitted to secretly recording conversations without the consent and knowledge of his employer and that Cabana was discharged for the threatening tone of his emails and for recording conversations without his employer's consent. The referee made no findings regarding which specific conversation or meeting Cabana recorded or whether the conversation was intended to be "private" within the meaning of the eavesdropping statute. The referee concluded that, based on a preponderance of the evidence, Cabana was ineligible for unemployment benefits due to misconduct in connection with his work because he admitted to recording a private conversation without consent, in violation of the criminal eavesdropping statute (720 ILCS 5/14-2(a) (West 2024)), which constituted misconduct under section 602(A) of the Act.

¶ 11    Cabana appealed to the IDES Board of Review. On May 30, 2024, the Board of Review affirmed the referee's decision, finding that Cabana met with JC Licht representatives in a conference room to discuss his performance "[o]n or about August 31, 2022." The Board of

Review found that Cabana recorded that conversation without the employer's consent, and that the employer intended the conversation to be private. It found that Cabana was terminated, in part, because of that incident and that Cabana admitted to it. The Board of Review also addressed Cabana's argument that the conversation he recorded was public and found "no merit to that argument." The Board of Review held that the "conversation was between an employer agent and an employee, related to the performance of the employee, and was in a conference room. As such, the record supports a finding the employer agent intended the conversation to be private and such an expectation was reasonable." The Board of Review then found that the record established that Cabana committed unlawful conduct in violation of the criminal eavesdropping statute and was discharged for that misconduct under section 602(A). 820 ILCS 405/602(A) (West 2024). The Board of Review additionally incorporated the decision of the referee, which it found to be well-founded and supported by the facts and law, except to the extent to which the referee's decision was inconsistent with the Board of Review's findings or conclusions.

¶ 12    Cabana then filed a complaint for administrative review in the circuit court of Cook County. The circuit court affirmed the Board of Review's decision, finding that it was not clearly erroneous. This appeal follows.

¶ 13    We initially note that Cabana's briefs fail to comply with Supreme Court Rule 341(h) (eff. Oct 1, 2020). His appellant's brief lacks a table of contents section, his statement of facts section includes conclusory and argumentative statements without citation to the record, and his argument section fails to cite to pertinent legal authority in support of his arguments. See Ill. Sup. Ct. R. 341(h)(1), (6)-(7) (eff. Oct. 1, 2020). We are entitled, as a reviewing court, to have the issues on appeal clearly defined, pertinent authority cited, and a cohesive legal argument presented. *Lewis*

*v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5. When an appellant fails to comply with Rule 341, this court may strike their brief and dismiss the appeal. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 77. Compliance with Rule 341 is mandatory and the fact that a party appears *pro se* does not relieve that party from complying as nearly as possible with the rules for practice before this court. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. However, because we can discern the issues raised by Cabana on appeal, and we have the benefit of a cogent appellee's brief, we will consider his arguments to the extent to which they are properly presented. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001).

¶ 14     We also note that Cabana's reply brief attaches documents which are not in the record, including documents from a separate proceeding in federal court involving Cabana and JC Licht. Cabana also spends several pages of argument discussing a separate wage dispute he had with JC Licht. "[O]ur review is limited to the record before us; neither the trial court nor this court can consider additional evidence." *Persaud v. Illinois Department of Employment Security*, 2019 IL App (1st) 180964, ¶ 27; see also *Brandenberry Park Condominium Ass'n v. Abu Taleb*, 2020 IL App (1st) 200442, ¶ 22 (a party cannot supplement the record on appeal by attaching documents to their brief). Accordingly, we will not consider any documents submitted by Cabana which are not included in the record or any of his arguments based on such documents.

¶ 15     On appeal, Cabana argues that the Board of Review erred in finding that he was discharged for misconduct by illegally recording a private meeting "[o]n or about August 31, 2022." He argues that the evidence showed that the meeting scheduled for that day was cancelled and "[h]ence no illegal recording took place." IDES responds that the Board of Review's finding that Cabana committed misconduct was not clearly erroneous when he admitted to secretly recording a

conversation with Bryza, and the exact date of the conversation that Cabana recorded was not crucial to this finding.

¶ 16     On administrative review of an IDES decision, we review the final decision of the Board of Review, rather than the decision of the circuit court. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009).  Our standard of review depends on the nature of the question presented. *Id.* The factual findings of the Board of Review are deemed *prima facie* true and correct and will not be reversed unless they are against the manifest weight of the evidence. *Id.* Factual determinations are against the manifest weight of the evidence only "if the opposite conclusion is clearly evident." *Id.* We will not "reweigh the evidence to determine where the preponderance of the evidence lies." *McDermott v. City of Chicago Police Bd.*, 2016 IL App (1st) 151979, ¶ 28. However, "the deference we afford the administrative agency's decision is not boundless." *Wade v. City of North Chicago Police Pension Bd.*, 226 Ill. 2d 485, 507 (2007).

¶ 17     The Board of Review's decision to deny unemployment insurance benefits based on the claimant's discharge for misconduct is a mixed question of law and fact, which requires a court to determine the legal effect of a given set of facts. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21. Mixed questions are reviewed under the "clearly erroneous" standard. *Id.* "A decision is clearly erroneous if, based on the entire record, the reviewing court is 'left with a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 18     Under the clearly erroneous standard, we must determine whether the evidence in the record supports the Board of Review's determination that Cabana was discharged for misconduct within the meaning of section 602(A) of the Act (820 ILCS 405/602(A) (West 2024)). *Petrovic*,

2016 IL 118562, ¶ 21. Section 602(A) of the Act provides that an individual is ineligible for unemployment benefits if he is "discharged for misconduct connected with his work." 820 ILCS 405/602(A) (West 2024). Generally, to establish such misconduct, the employer must establish that: (1) the employer had a reasonable work rule; (2) the employee deliberately and willfully violated that rule; and (3) the violation was either repeated by the employee after a prior warning or harmed the employer. *Cannici v. Department of Employment Security Board of Review*, 2021 IL App (1st) 181562, ¶ 41. There is a common sense exception to these statutory requirements. "[E]vidence of a rule need not be shown where the employee's conduct would otherwise be illegal or constitute a *prima facie* intentional tort." *Petrovic*, 2016 IL 118562, ¶ 36. This includes behavior that would constitute a crime. *Id.*

¶ 19    Cabana's main contention is that the Board of Review erred by finding that he recorded a conversation with JC Licht representatives without their consent "[o]n or about August 31, 2022," as the meeting scheduled for that day was cancelled. We agree. The record shows that JC Licht cancelled Cabana's performance review meeting scheduled for August 31, 2022. Thus, there is no evidence in the record suggesting that Cabana secretly recorded a private conversation with JC Licht representatives on that date. There is also no evidence in the record to support the Board of Review's finding that Cabana recorded a meeting with his employer related to Cabana's performance in a conference room at any time. It is undisputed that no such meeting took place. Also, the Board of Review did not find that Cabana improperly recorded any other meeting with his employer. Therefore, the Board of Review's finding that Cabana committed eavesdropping "[o]n or about August 31, 2022" by recording a private performance review meeting with his employer in a conference room is against the manifest weight of the evidence.

¶ 20     However, our review does not end there, because the Board of Review also incorporated the findings and conclusions of the referee "except as to any part that is inconsistent with [the Board of Review's] findings of fact or conclusions of law." The referee found that Cabana "admitted recording conversations he had with his employer without the consent of those he was recording," this conduct violated the eavesdropping statute, and Cabana was terminated for that misconduct.

¶ 21     "A person commits eavesdropping when he or she knowingly and intentionally *** [u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation." 720 ILCS 5/14-2(a)(2) (West 2024). A "private conversation" includes "any oral communication between 2 or more persons *** when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d) (West 2024).

¶ 22     We find that the evidence and testimony presented at the hearing was insufficient to support the referee's conclusion that Cabana violated the eavesdropping statute, as there was no evidence as to what conversations or meetings he recorded or that any conversation recorded by Cabana was intended to be "private" by any participant within the meaning of the eavesdropping statute. While Cabana admitted to using a recording device to record a conversation with Bryza without his permission, this admission does not establish that any conversation he recorded was intended to be private. Additionally, the referee did not address the "private" element of the statute or find that any conversation recorded by Cabana was intended to be private. There is no evidence in the record that Bryza or Cabana intended any conversation recorded by Cabana to be private. The only

specific conversation that Cabana admitted to recording was a training meeting, and there is no evidence that the training was intended to be private. Therefore, there was insufficient evidence in the record to support the referee's conclusion that Cabana violated all elements of the eavesdropping statute during his employment and such a finding is clearly erroneous.

¶ 23    Accordingly, the Board of Review's conclusion that Cabana was discharged for misconduct is clearly erroneous. *Petrovic*, 2016 IL 118562, ¶ 22. Cabana was found ineligible for unemployment benefits solely because of a finding that he committed an illegal act, specifically a violation of the eavesdropping statute, and was discharged for that misconduct. Neither the referee nor the Board of Review identified any alternative basis for their decision. The referee specifically found that Cabana was not made aware of any written policies of JC Licht and that Cabana was not insubordinate. Because there was insufficient evidence that Cabana violated the eavesdropping statute and there is no other basis in the record to conclude that Cabana was discharged for misconduct, the Board of Review's conclusion that Cabana was discharged for misconduct within the meaning of section 602(A) of the Act was against the manifest weight of the evidence and clearly erroneous. Therefore, we reverse the judgment of the circuit court of Cook County and the decision of the Board of Review.

¶ 24    Circuit court judgment reversed.

¶ 25    Board of Review decision reversed.